Argued March 14; affirmed October 14, 1930

## HAGUE *v.* HAGUE ET AL.

(291 P. 1017)

*J. C. Rutenic* of Klamath Falls (Rutenic & Yaden of Klamath Falls on the brief) for appellants.

*E. L. Elliott* and *Fred H. Mills,* both of Klamath Falls, for respondent.

BEAN, J. This is a suit for the purpose, among other things, of determining title to 120 acres of land in Klamath county, known as Klamath Gardens, and to enjoin T. O. Hague from interfering with the same. T. O. Hague died since the rendition of the decree. The present defendants have been substituted in his stead.

The land was acquired in 1906 and conveyed to Liszetta Blaeser. She was at that time a resident of New Jersey. In 1912 she came to Oregon, living in

Portland for a time, and in 1915 she came to Klamath Falls. The situation is complicated by the fact that, after several efforts in Klamath and Multnomah counties, T. O. Hague obtained an invalid decree of divorce in August, 1911, from Anna E. Hague, one of the appellants. On May 7, 1912, he married Liszetta Blaeser. The divorce from Anna E. Hague was set aside March 28, 1916. (See *Hague v. Hague,* 79 Or. 646 (156 P. 277).) After the decree of divorce was set aside plaintiff and T. O. Hague lived separately, but he was permitted to reside on the land in controversy. The land was paid for by Mrs. Liszetta Blaeser Hague.

The original defendant set up in his answer as an exhibit an alleged agreemont between plaintiff and defendant, which appears to have been the result of an effort, particularly upon the part of plaintiff, to extricate herself from the entanglements arising out of the illegal marriage to T. O. Hague. The memoradum, so far as material here, contains the following:

"And whereas said Klamath Gardens have been developed as stated at a cost of at least $3,500 to L. B. Hague, $1,800 of which was secured by mortgage to the Federal Land Bank of Spokane and $1,000 was secured from Alfred Blaeser as a personal loan without security and $641 was secured by loan on the policy of the life of L. B. Hague, in addition to which said L. B. Hague has maintained a home on said premises since 1915; and whereas said mortgage to the Federal Land Bank has been partially reduced so that at the date hereof the obligation does not exceed $1,690, but the obligations of $1,000 and of $641 are still in full force and effect;

"And whereas said T. O. Hague now desires to assume to absolute ownership and control of both of the above mentioned premises, and also the entire obligations for the support of himself and of said premises and the livestock thereon; and also desires to be released from any obligation for indebtedness

incurred in above mentioned development, save and except said Federal Farm Loan mortgage, and to free said L. B. Hague from any obligation of further support of himself or maintenance of said premises;

"Now therefore, in order to adjust their several financial affairs, and to settle all matters of controversy between the parties hereto, It Is Hereby Mutually Agreed As Follows:

"1. That said L. B. Hague shall be and remain the record owner of both of said above mentioned real properties, but in truth and fact said ownership shall be held and considered as being in trust for said T. O. Hague, for his exclusive use and benefit, and said T. O. Hague does hereby agree to assume, and does hereby assume the said mortgage to the Federal Land Bank of Spokane, and agrees to pay the amortization payments as they become due, and also to keep taxes and insurance paid as required by said bank;   *    *    *"

The memorandum was dated February 3, 1923, and made without consideration.

The plaintiff, in her reply, pleaded that the agreement as to the land was fraudulent and void and obtained from her when she was in ill-health and in a nervous and weakened condition by the dominating influence of T. O. Hague, under duress and by threats that if plaintiff did not comply with the request of T. O. Hague her character would be blackened and she would be compelled to leave Klamath county, and by intimidating her. Fraud and duress were denied by T. O. Hague.

It appears that for a long time after plaintiff came to Oregon she was engaged as a public stenographer and real estate agent. T. O. Hague had been engaged in the importing business, but it dwindled so that he received but very little, and during the time they were associated together Mrs. Hague, so-called, contributed almost entirely to his support. T. O. Hague never

complied with any part of the attempted agreement and paid no portion of the Federal Farm Loan mortgage and failed to free Liszetta Blaeser Hague from support of himself.

■ The main question under consideration is whether the agreement, exhibit A, is valid or whether it is void for fraud or undue influence. The testimony in the case clearly shows that it was the result of undue influence and of unfair advantage taken by T. O. Hague of the plaintiff. The testimony is diametrically conflicting. It was never acknowledged as a declaration of trust, and the plaintiff has always repudiated the same since she signed it. It has never been proven as a valid instrument. The defendant himself states, in substance, that the plaintiff put into the agreement "what she did not want in," at a time when, as stated by her physician, "she was pretty much of a wreck." She expended about $7,000 in improvements on the land. At the time the Federal Land Bank mortgage was executed and a loan of $1,800 obtained, she paid T. O. Hague out of that sum $280 as compensation for improvements he had made upon the land. T. O. Hague made no claim to the property until after the execution of the instrument, February 3, 1923. That instrument, in so far as it refers to the land in question, was fraudulent and void and of no effect. The equities are all with the plaintiff.

■ There is no legal question that requires a discussion and reference to the testimony would be of no benefit. The trial court promptly found for plaintiff and its findings should not be disturbed.

The decree of the circuit court is affirmed.

COSHOW, C. J., BROWN and BELT, JJ., concur.